Matthias, J.
The purpose clause of the charter of The Security & Bond Deposit Company is as follows: “Contracting for and buying and selling securities and bonds and borrowing and loaning on same; also making loans on real estate security.”
The defendant has no authority to conduct a banking business, or to solicit, receive or accept money or its equivalent on deposit, as a business, and none is claimed. The question presented, therefore, is whether the plan of operation adopted and pursued by it, or the transactions of the defendant, are in excess, or in violation, of the authority conferred upon it by the state in the respects or either of the iespects complained of.
It is provided by Section 3, Article XIII of the Constitution, that “no corporation not organized under the laws of this state, or of the United States, or person, partnership or association shall use the word ‘bank/ ‘banker’ or ‘banking/ or words of similar meaning in any foreign language, as a designation or name under which business may be conducted in this state unless such corporation, person, partnership or association shall submit to inspection, examination and regulation as may hereafter be provided by the laws of this state.” Pursuant to the policy thus clearly expressed, the general assembly of Ohio passed appropriate legislation providing for the regulation, supervision and inspection of banking institutions of the state for *119 the purpose of protecting and safeguarding the interests of the public. Such act should be so construed as to accomplish the very evident purpose of its enactment. The forceful and purposeful attempts to avoid or evade the effect of its beneficial and salutary provisions should not be encouraged or permitted. The scheme devised and attempted to be executed by the defendant is ingenious and attractive. In order to carry on the business stated in the purpose clause of its charter it was necessary to procure funds, and the defendant sought to provide this “working fund,” so-called, by inducing the deposit of liberty bonds with it by the owners thereof. Such deposit could be made with the defendant, subject to call, or for one, two or three years, the rate of interest paid therefor varying from two to four per cent., calculated on the face value thereof, in addition to that called for by coupons attached thereto. A receipt was given the depositor of such bonds, stating that the same had been deposited in the “working or surplus fund of The Security & Bond Deposit Company of Toledo.” Under the plan and method of operation of the defendant these bonds are tised as collateral security for the repayment of money which it borrows and employs in its business of discounting first mortgages, loaning on liberty bonds and in buying and selling and dealing in liberty bonds and real estate mortgages. Up to the time this case was heard most of the money employed in its business had been borrowed by the defendant, The Security & Bond Deposit Company of Cleveland.
It seems quite clear that in the interest of and for the protection of the public such business should *120 be under the supervision and inspection of the state. The entire transaction to which we have referred, particularly that of inducing deposits of liberty bonds, has the appearance of an attempt to avoid and evade the regulatory provisions of the banking laws of the state, and is a plain subterfuge. It is an attempt to perform some functions of a banking institution, but at the same time escape the limitations and restrictions placed thereon.
Section 710-2, General Code, so far as it is pertinent, reads: “The term ‘bank’ shall include any person, firm, association, or corporation soliciting, receiving or accepting money, or its equivalent, on deposit as a business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a passbook, a note, a receipt or other writing.”
Whatever may be the abstract definition of “equivalent of money,” as that term is used in this provision, the defendant by its method of dealing, and by the mode of transaction of its business, has placed that designation and characterization upon liberty bonds. It is conceded that checks, drafts, bills of exchange and express money orders fall within the meaning of the phrase “or its equivalent,” and it seems obvious that such phrase was employed so that no one could accept deposits other than money and thereby avoid or evade the provisions of the banking act. It would be quite absurd to hold that the one class of deposits referred to should be treated as the equivalent of money, and the other, though deposited with the defendant and •used in the manner heretofore indicated, not the equivalent of money.
*121 The relation of the defendant and its depositor is that of debtor and creditor rather than bailor and bailee, being substantially the relation of a bank and its depositor (Treasurer, Fayette County, v. People’s & Drovers’ Bank, 47 Ohio St., 503), for it appears from the record that the defendant does not undertake to return to the depositor the same bonds, but only bonds “of the same kind.’’ In that respect the relation is no different than if the deposit were of money instead of that which is used by the defendant to procure money to constitute its working-capital.
The language used in the opinion in the case of Bank of Marysville v. Windisch-Muhlhauser Brewing Co., 50 Ohio St., 151, at page 157, with reference to the bank’s deposits is equally applicable here: “The bank does not contract to keep on hand the particular money deposited, or pay depositor’s checks out of it, nor is it expected to do so. The moneys of such depositors are commingled with other moneys of the bank * * *. It [the bank] is accountable as a debtor; and the relation between it and the general depositor, is essentially that of debtor and creditor. In legal effect the deposit is a loan to the bank.”
At least to the extent of soliciting and receiving such deposits the defendant is engaging in the banking business, and in that respect is acting without authority. The judgment of the court of appeals is affirmed.

Judgment affirmed.

Johnson, Hough, Wanamaker and Jones, JJ., concur.